# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY LUGO IBARRA, | 1:10-cv-1809-LJO-DLB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING RESPONDENT'S MOTION TO DISMISS |
| v. | |
| ANTHONY HEDGPETH, | [Doc. 18] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

BACKGROUND

Petitioner was convicted in Fresno County Superior Court of one count of second degree murder, three counts of assault with a deadly weapon, and one count of transporting methamphetamine.  (2 CT 405-415.)  Petitioner was sentenced to thirty years to life for the second degree murder conviction, and the sentence was ordered to run consecutive to a term of thirty years to life for the assault convictions.  (12 RT 2908-2912.)

On December 27, 2007, the California Court of Appeal, Fifth Appellate District, affirmed the judgment.  (Lod. Doc. 4.)  The California Supreme Court denied review on April 9, 2008.  (Lod. Doc. 6.)  Petitioner then filed a petition for writ of certiorari in the United States Supreme Court.  The petition was denied on March 2, 2009.

///

On February 18, 2010, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  On June 2, 2010, he submitted a supplemental brief in support of the petition.  On September 15, 2010, the California Supreme Court denied the petition with citation to In re Swain (1949) 34 Cal.2d 300, 304.

Petitioner filed the instant petition for writ of habeas corpus on September 30, 2010.  Respondent filed a motion to dismiss the petition on January 24, 2011.  Petitioner did not file an an opposition.

## DISCUSSION

### A.  Procedural Grounds for Motion to Dismiss

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ."  The Advisory Committee Notes to Rule 5 of the Rules Governing Section 2254 Cases state that "an alleged failure to exhaust state remedies may be raised by the attorney general, thus avoiding the necessity of a formal answer as to that ground."  The Ninth Circuit has referred to a respondent's motion to dismiss on the ground that the petitioner failed to exhaust state remedies as a request for the Court to dismiss under Rule 4 of the Rules Governing Section 2254 Cases.  See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (1991); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982).  Based on the Rules Governing Section 2254 Cases and case law, the Court will review Respondent's motion for dismissal pursuant to its authority under Rule 4.

### B.  Exhaustion of State Remedies

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations.  Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55 (1991); Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888 (1995) (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis). Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. Duncan, 513 U.S. at 365-66, 115 S.Ct. at 888; Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir.1998). For example, if a petitioner wishes to claim that the trial court violated his due process rights "he must say so, not only in federal court but in state court." Duncan, 513 U.S. at 366, 115 S.Ct. at 888. A general appeal to a constitutional guarantee is insufficient to present the "substance" of such a federal claim to a state court. See Anderson v. Harless, 459 U.S. 4, 7, 103 S.Ct. 276 (1982) (Exhaustion requirement not satisfied circumstance that the "due process ramifications" of an argument might be "self-evident."); Gray v. Netherland, 518 U.S. 152, 162-63, 116 S.Ct. 1074 (1996) ("a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.").

Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir.2000), *amended*, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir.1998). In Duncan, the United States Supreme Court reiterated the rule as follows:

> In Picard v. Connor, 404 U.S. 270, 275 . . . (1971), we said that exhaustion of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "'opportunity to pass upon and correct' alleged violations of the prisoners' federal rights" (some internal quotation marks omitted). If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only

3

in federal court, but in state court.

Duncan, 513 U.S. at 365-366. The Ninth Circuit examined the rule further, stating:

> Our rule is that a state prisoner has not "fairly presented" (and thus exhausted) his federal claims in state court *unless he specifically indicated to that court that those claims were based on federal law*. See Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in Duncan, this court has held that the *petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is "self-evident,"* Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 7 . . . (1982), or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds. Hiivala v. Wood, 195 F3d 1098, 1106-07 (9th Cir. 1999); Johnson v. Zenon, 88 F.3d 828, 830-31 (9th Cir. 1996); . . . .
>
> In Johnson, we explained that the petitioner must alert the state court to the fact that the relevant claim is a federal one without regard to how similar the state and federal standards for reviewing the claim may be or how obvious the violation of federal law is.

Lyons v. Crawford, 232 F.3d 666, 668-669 (9th Cir. 2000) (italics added).

Petitioner presents twelve claims for relief in the instant petition. Respondent submits that grounds ten through twelve mirror the three claims raised on direct appeal, and thus have been exhausted . However, Respondent argues grounds one through nine were not raised on direct appeal, and were not presented in his petition for review to the California Supreme Court on direct appeal. Rather, these claims are similar, although not identical, to the claims raised in the state habeas petition denied by the California Supreme Court with citation to In re Swain, 34 Cal.2d 304.

In re Swain articulates the procedural requirements that a California habeas petitioner allege with particularity the facts supporting his claims and explain and justify the delay in the presentation of those claims. In re Swain, 34 Cal.2d 300, 304, 209 P.2d 793 (1949). The Ninth Circuit has held that an In re Swain citation is a denial on procedural grounds, because such a deficiency, when it exists, can be cured in a renewed petition. Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir. 1986); Harris v. Superior Court, 500 F.2d 1124, 1128, (9th Cir. 1974). Further, Duvall reiterates the requirement that an application for habeas corpus "should both (i) state fully and with particularity the facts on which relief is sought, as well as (ii) include copies of

reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations." Duvall, 9 Cal.4th at 474 (citations omitted). However, there is an exception to this rule if the federal court finds that the facts as pled and presented to the state's highest court were pled with as much particularity as is practicable. See Villalobos, 799 F.2d at 1320.

Here, because the California Supreme Court denied Petitioner's state habeas petition with citation to Swain, Petitioner could have filed another state habeas petition in an attempt to plead his case with more specificity. Therefore, the state court remedies have not been exhausted with respect to claims one through nine.

In addition, an independent review of the state petition demonstrates Petitioner could and should have alleged his claims with greater specificity. In the first claim of his state habeas petition, Petitioner argued that his public defender Ronald Perring "was conspiring with the Judge, Prosecutor and Cops to cover-up the murder of seventeen-year-old Katrina Marie Compos and Petitioner 'fired' Perring but the judge denied Petitioner his Constitutional Rights to fire Perring." (Lod. Doc. 8, at 3-12.) As supporting facts, Petitioner alleges that the trial judge violated his right to represent himself in violation of Marsden, outrageous governmental misconduct denied him due process, and he was denied effective assistance of counsel. Thus, it is unclear what theory Petitioner is seeking relief for by this claim.

Petitioner's second claim alleged that the trial judge denied his "Constitutional Rights to have his family hire another attorney who was not being extorted and ordered to cover-up the murder by cops." (Lod. Doc. 8, at 3-13.) Petitioner claims that the trial judged would not allow Petitioner to fire his public defender, the public defender told Petitioner to testify falsely that the drugs belonged to him and that he shot his fiancee or else he would receive the death penalty. (Id.) Based on these allegations, the claim lacks specificity and was not fairly presented to the California Supreme Court.

Petitioner third claim alleged that he was denied his "Sixth Amendment Right to represent himself in violation of Feratta and People v. Joseph." (Lod. Doc. 8, at 3-15.) As support, Petitioner merely claims the trial judge denied his Sixth Amendment right to present an

5

effective defense by forcing the federal defender on him.  Petitioner cites a number of cases dealing with various constitutional rights, and the legal basis of this claim is unclear.

Petitioner's fourth claim alleged that "Public Defender Perring in a conspiracy with the Judges[,] Prosecutors[,] and Cops and violation of Brady blocked Petitioner from being able to call crucial defense witnesses and to introduce defense evidence."  Although this claim seems to be premised on alleged misconduct by the prosecution, Petitioner alleges facts related only to the conduct of his attorney.  Accordingly, the underlying facts and legal theory of the claim are unclear, and the claim lacks specificity and was not fairly presented to the California Supreme Court.

Petitioner's fifth claim alleges that the judge, prosecutor, and public defender "conspired to 'rig' the jury to cover-up the murder by Fresno Cops." (Lod. Doc. 8, at 3-18.)  As a supporting fact, Petitioner alleged the judge, prosecutor, and public defender violated his constitutional rights of access to the "jury list" to expose "'jury rigging.'" (Id.)  Petitioner then claimed the prosecutor excluded Black, Asian, and Hispanic individuals from the jury resulting in an unfair cross section of the community.  Thus, it is unclear whether this claim is based on some unknown constitutional right to access to the "jury list" or if it based on the prosecutor's alleged improper exclusion of minorities from the jury panel.  This claim is further unclear when reviewing the cases cited by Petitioner which range from jury instruction errors and ineffective assistance of counsel. (Id. at 3-19.)

In the sixth claim, Petitioner argues he was shot in the back of the head, thrown in jail, put in isolation, brainwashed, tortured, denied legal assistance, told he would receive the death penalty, and "was made incompetent." (Lod. Doc. 8, at 3-20.)  Although Petitioner cites a number of "supporting cases," the legal basis and underlying facts remain unclear.  For instance, it cannot be determined if he is alleging he was denied the right to a fair trial because he was "brainwashed" and "made incompetent" or whether he is claiming his conviction is based on false evidence somehow obtained through him being "incompetent."  Based on these circumstances, the claim is unclear and was not fairly presented to the California Supreme Court.

///

Petitioner's seventh claim is also unclear.  In this claim, Petitioner alleges the "'Provacative [sic] Act' is unconstitutional and makes Cops immune from prosecution for killing anyone they want then carrying out their common practice of planting drugs to blame someone else for their killing." (Lod. Doc. 8, at 3-22.)  In support of the claim, that his attorney "told [him] that this was an unconstitutional law that the cops bribed corrupt [sic] legislators to pass to cover-up murders by cops." (Id.)  However, Petitioner failed to explain why the law was unconstitutional, or even explain the exact law he was referring to.  Petitioner merely reiterated allegations he had previously made regarding him being "shot in the head, isolated, subjected to drugs and torture and was incompetent at the time and . . . surrendered to this brainwashing and mind control." (Id.)  Therefore, this claim was not fairly presented to the California Supreme Court.

In his eighth claim, Petitioner argued that his attorney had a "clear 'conflict of interest'" because his son had been arrested by the police. (Lod. Doc. 8, at 3-24.)  Petitioner continued to argue that the "length of prison time depended on brainwashing and manipulating [him] into falsely testifying that the drugs were his and that he moved the car to cover-up the murder by the cops[.]" (Id.)  Based on the inconsistent factual claims, this claim likewise lacks specificity and was not fairly presented.

Lastly, in the ninth claim, Petitioner claimed that "[i]n violation of 'Miranda' [t]hey never read Petitioner his rights and repeatedly subjected [him] to interrogations and brainwashing." (Lod. Doc. 8, at 3-26.)  As with the prior claim, Petitioner continued to argue that his attorney was "forced on [him], not to protect [his] right[s] but to brainwash [him] into repeating what the Cops and Judge wanted him to say." (Id.)  It is not clear whether Petitioner's claim is based on statements alleged taken in violation of Miranda, or that his attorney was involved in a "conspiracy" with the prosecutor and judge.  Moreover, although Petitioner's references a Miranda violation, he fails to identify any statements taken in violation of Miranda and used against him at trial.  Accordingly, this claim was not fairly presented.

Because grounds one through nine were not fairly presented to the California Supreme Court, they are not exhausted.  Thus, the instant petition should be dismissed without prejudice

1 or the unexhausted claims withdrawn.  Pliler v. Ford, 542 U.S. 225, 230 (2004).

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss the instant petition be GRANTED; and
2. The instant petition for writ of habeas corpus be DISMISSED without prejudice unless Petitioner elects to dismiss the unexhausted claims.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     **March 2, 2011**                          **/s/ Dennis L. Beck**
                                                 UNITED STATES MAGISTRATE JUDGE